```
           IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION


Courtney Elizabeth Shaw,        :

        Plaintiff,              :

    v.                          :    Case No.  2:14-cv-89

Michael J. Astrue,              :    JUDGE MICHAEL H. WATSON
Commissioner of Social Security,     Magistrate Judge Kemp

        Defendant.              :
```

REPORT AND RECOMMENDATION

I.  Introduction

Plaintiff, Courtney Elizabeth Shaw, filed this action seeking review of a decision of the Commissioner of Social Security denying her application for supplemental security income. That application was filed on August 16, 2011, and alleged that Plaintiff became disabled on December 31, 2005.

After initial administrative denials of her claim, Plaintiff was given a video hearing before an Administrative Law Judge on July 15, 2013. In a decision dated August 1, 2013, the ALJ denied benefits. That became the Commissioner's final decision on December 4, 2013, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on April 4, 2014. Plaintiff filed her statement of specific errors on May 22, 2014, to which the Commissioner responded on August 26, 2014. No reply brief has been filed, and the case is now ready to decide.

II.  Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 21 years old at the time of the administrative hearing and who has her GED, testified as follows.

Her testimony appears at pages 617-630 of the administrative record.

At the time of the hearing, Plaintiff had been working at a Taco Bell for two months. She worked thirty hours per week, primarily as a cashier. Plaintiff previously worked at a Wendy's restaurant, but found it hard to work and do her schoolwork at the same time. She had also worked for a short time at a pizza restaurant, a job from which she was fired, and had spent short periods of time performing other jobs, including two stints working as a telemarketer.

Plaintiff was being treated for bipolar disorder. She had manic spells that lasted for weeks, and depressive episodes that could last for months. She had attempted suicide seven or eight times. She had frequent outbursts of anger as well and had been jailed once. Medication controlled her mood swings to some extent. She testified to frequent panic attacks and relatively infrequent audio hallucinations. The only physical limitation she testified about was having trouble sitting still for long periods of time.

Plaintiff admitted to having problems with figures of authority, which had led to her being fired from one job, but she had no problem dealing with the public. She socialized with friends, read, watched television, and used the computer. She quit a number of jobs due to depression and being unable to get up and go to work.

### III. The Medical Records

The medical records in this case are found beginning on page 182 of the administrative record. The pertinent records - those relating to the issues raised in the Statement of Errors - can be summarized as follows.

There are a number of records which predate Plaintiff's application date, and which show that as an adolescent, she had

psychological issues and had been placed in several residential treatment facilities in 2007. She was diagnosed as bipolar as well as with several other impairments and was treated through medication and counseling. She was hospitalized for a week in 2008 after cutting herself with a razor blade, and sent to another residential program in January, 2009, which she completed in December of that year. Her aftercare plan included individual therapy and medication management, as well as completing her GED, which she accomplished. When seen shortly following her completion of the program, she had a diagnosis of only bipolar disorder, and her GAF was rated at 60, with her memory, judgment and insight being intact. (Tr. 257-58).

In 2011, Plaintiff underwent a psychological evaluation done by Ms. Guthrie. At that time, Plaintiff reported difficulty keeping a job due to irrational thoughts and not being able to afford her medication. She described mood swings and anxiety. She had not had any counseling since age 16. She appeared depressed and her pace in task completion was "mildly slow." Diagnoses included bipolar disorder, severe, without psychotic features, generalized anxiety disorder, and avoidant personality disorder. Her prognosis was guarded due to her lifelong bipolar disorder. (Tr. 358-63). Dr. Shaver, a state agency reviewer, subsequently concluded that Plaintiff did not have a severe psychological impairment. (Tr. 366).

Plaintiff saw Dr. Davis in 2013 in an effort to get back on medication. He prescribed a combination of medications which had worked for her in the past and was confident that she would do very well. (Tr. 506-07). When seen again in a month, she had been working for several weeks. (Tr. 511-12).

### IV.   The Vocational Testimony

Victor Alberigi was the vocational expert in this case. His testimony begins on page 631 of the administrative record.

Mr. Alberigi testified that none of Plaintiff's past work constituted substantial gainful activity.  He was then asked some questions about a hypothetical person who had Plaintiff's educational and work history.  The person could not do jobs which required extensive public contact or extensive contact with supervisors and other persons in positions of authority.  The person also could not do work involving a high degree of decision making or with high production quotas.  According to Mr. Alberigi, someone with those limitations could do jobs such as office or hotel cleaner, night cleaner, or street cleaner.  Someone who missed even one day of work per month without accrued leave could not be employed, however, nor could someone who would not follow a supervisor's directions up to one-third of the time.

### V.  The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 10-21 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff had not engaged in substantial gainful activity after her application date of August 16, 2011.  Next, the ALJ determined that Plaintiff had severe impairments including bipolar disorder, generalized anxiety with panic attacks, oppositional defiant disorder, and personality disorder.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at all exertional levels, but she could not tolerate extensive and ongoing contact with the public and with supervisors or people in positions of authority.  She also could not do jobs requiring high production quotas or high-level

decision-making. The ALJ found that, with these restrictions, Plaintiff could do the jobs identified by the vocational expert. The ALJ further found that such jobs existed in significant numbers in the regional (West Virginia) and national economies. Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

      VI.   <u>Plaintiff's Statement of Specific Errors</u>

In her statement of specific errors, Plaintiff raises only these issues: (1) the ALJ did not make a proper credibility finding; (2) the ALJ did not properly make a function-by-function analysis of Plaintiff's limitations; and (3) the ALJ should not have relied on testimony about jobs existing in a region other than the one Plaintiff resided in. These issues are evaluated under the following legal standard.

<u>Standard of Review.</u> Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" <u>Id</u>. <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>,

340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

>             A.   The ALJ's Credibility Assessment

The ALJ found that Plaintiff's description of her symptoms was not entirely credible.  As support for that conclusion, he noted that she had given inconsistent descriptions of her symptoms and limitations in the past, that her reports were inconsistent with the findings of the consultative examiner, that the records showed that medication did control her symptoms fairly well, that her testimony about her work history and problems did not match up entirely with what she said on her disability forms, and that she might have been motivated to discontinue working simply because she did not like her jobs. (Tr. 17-18).  Plaintiff's relatively brief argument on this subject consists of her claim that the ALJ "skimmed briefly through" her history of treatment when she was younger and that he placed too much reliance on her failure to comply with prescriptions for medication.  Statement of Errors, Doc. 13, at 9.

A social security ALJ is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking.  Rather, the ALJ must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors.  20 C.F.R. §416.929(c)(3).  Although the ALJ is given wide latitude to make determinations about a claimant's

credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons given do not have substantial support in the record. See, e.g. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).

Here, the ALJ provided a detailed explanation for his finding that Plaintiff's testimony was not entirely credible. He cited various factors which are listed in §416.929 including her daily activities and treatment history. He was entitled to conclude that the recent treatment records were more pertinent than those which predated her application date by several years. See, e.g., Spears v. Commissioner of Social Sec., 2013 WL 2181373, *8 (S.D. Ohio May 20, 2013)(finding that an ALJ was entitled to discount extensive history of treatment prior to the claimant's onset date), adopted and affirmed 2013 WL 4855191 (S.D. Ohio Sept. 11, 2013). He did not appear to place exclusive reliance on any factor and, as the Commissioner points out, Plaintiff's failure to be medication-compliant at times was not necessarily a function of either her lack of funds or her mental impairments. Given the broad deference afforded to the ALJ concerning matters of credibility, the Court does not find any basis for reversing that determination in this case.

B.  The RFC Finding

As noted above, the ALJ did not find any physical limitations, and Plaintiff does not contest that part of the RFC determination. Rather, she claims that mental limitations he found did not adequately reflect the symptoms caused by her severe psychological disorders, including her bipolar disorder, anxiety disorder, oppositional defiant disorder, and personality disorder. However, the mere diagnosis of a disorder is not the equivalent of limitations flowing from that disorder, so the fact

that Plaintiff had these diagnoses does not necessarily mean that the ALJ did not accurately or reasonably assess Plaintiff's mental functional capacity. See Helton v. Colvin, 2013 WL 6626867, *7 (N.D. Ohio Dec. 16, 2013)("the fact that a physician diagnosed Plaintiff with certain mental disorders did not, alone, require the ALJ to include limitations specifically related to those diagnoses in Plaintiff's RFC"). As this Court has said, "[i]t is in the area of functional limitations resulting from her mental health impairments that Plaintiff's case either takes shape or begins to degenerate." Graham v. Commissioner of Social Sec., 2009 WL 3151239, *12 (S.D. Ohio Sept. 25, 2009).

Other than listing Plaintiff's diagnoses, her statement of errors identifies only two specific limitations which she believes should have found their way into the ALJ's residual functional capacity assessment. They are her purported inability to pay attention for more than seven minutes at a time and the fact that she has had a depressive episode lasting for three months. Statement of Errors, Doc. 13, at 10.

The latter limitation appears nowhere except in Plaintiff's testimony, and the Court has already affirmed the ALJ's credibility finding, so there is no basis on which the Court could conclude that the ALJ had to accept Plaintiff's version of how her depressive states affected her. The former limitation is discussed in connection with the issue of whether Plaintiff had any impairments which met or equaled the Listing of Impairments, and appears to have been taken verbatim from Plaintiff's own function report. See Tr. 130 (Plaintiff responded to the question of "For how long can you pay attention" by saying "like 7 mins."). It is not at all clear that the ALJ found that statement credible; he does not mention it in his discussion of residual functional capacity, and even when he discussed it in determining that Plaintiff's impairments did not satisfy one of

-8-

the Listings, he found that any deficits in attention were no more than moderate. The ALJ accounted for moderate difficulties in attention by limiting Plaintiff to work without high production quotas, and the vocational expert limited his identification of jobs to unskilled work. No examining or reviewing source found that Plaintiff had serious deficiencies in attention; as the Commissioner notes, the ALJ gave Plaintiff the benefit of the doubt by finding that she had severe psychological impairments which imposed some functional limitations even though the state agency reviewers thought otherwise. The Court finds no error in this portion of the ALJ's decision.

### C. Use of the West Virginia Regional Economy

Plaintiff's final claim of error is that the ALJ should not have relied on vocational testimony concerning the number of jobs existing in the West Virginia regional economy. She argues that she has always lived in Ohio, and the use of a different region of the country is not a reliable indicator of whether she can do substantial gainful activity. In support of that argument, she cites to language in Barrett v. Barnhart, 368 F.3d 691, 692 (7th Cir. 2004) to the effect that "the principal significance of the 'other regions' language in the statute [42 U.S.C. 423(d(2)(A)] is to prevent the Social Security Administration from denying benefits on the basis of 'isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the applicant] live[s].'"

The statute cited in Barrett, 42 U.S.C. 423(d)(2)(A), says:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For

> purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

The <u>Barrett</u> court was asked to correct a statement it made in an earlier opinion in the same case to the effect that the jobs a claimant must be able to do, in order to support a finding that she can be employed in substantial gainful activity, must exist in reasonable proximity to where she lives. The court acknowledged the statutory standard, which refers disjunctively to the region where a claimant lives or "several regions of the country," but stated that as a practical matter most vocational experts give numbers of jobs either in the state economy or a smaller region, so it stood by its earlier description of what must be shown to satisfy the statute.

  The Commissioner notes, first, that the record does not show that Plaintiff always lived in Ohio. She resided in Marietta when the case was filed, but the Court can take judicial notice that Marietta lies just across the Ohio River from Parkersburg, West Virginia, where Plaintiff attended the administrative hearing. Most of the treatment records, including the records of the residential treatment programs, are from West Virginia providers, and many contain a West Virginia address for Plaintiff. The West Virginia region is not, therefore, significantly isolated from Plaintiff's current place of residence, and certainly not from her past places of residence.

  Even assuming, however, that Plaintiff never resided in West Virginia, there is nothing in the record to suggest that jobs like night cleaner or motel cleaner exist only in isolated areas of the country or that they are not as common to Ohio as they are to West Virginia. District Courts within the Seventh Circuit have said that "<u>Barrett</u> does not stand for the proposition that,

as a matter of law, the jobs identified by the VE must exist within the claimant's locality," Smith v. Astrue, 2008 WL 794518, *12 (E.D. Wis. March 24, 2008), nor could it in light of the law and regulations. See 20 C.F.R. §416.966(a)("We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether ... (1) Work exists in the immediate area in which you live..."). As the Court of Appeals has noted, "[t]he Commissioner is not required to show that job opportunities exist within the local area." Harmon v. Apfel, 168 F.3d 289, 292 (6th Cir. 1999). Under these circumstances, the Court cannot find that the ALJ committed any error concerning the vocational findings.

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the

-11-

Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge
